## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### Civil Action No. 1:23-cv-01022

| | |
|---|---|
| INMAR CLEARING, INC.,<br><br>               Plaintiff,<br><br>   v.<br><br>RETAIL SERVICES WIS<br>CORPORATION d/b/a LAWRENCE<br>MERCHANDISING SERVICES,<br><br>               Defendant. | **COMPLAINT** |

Plaintiff Inmar Clearing, Inc. hereby files its Complaint against Defendant Retail Services WIS Corporation d/b/a Lawrence Merchandising Services and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Inmar Clearing, Inc. ("Inmar Clearing") is a corporation created under the laws of the State of North Carolina with its principal place of business at 1 W. 4th St, Suite 500, Winston-Salem, North Carolina, 27101.

2.     Defendant Retail Services WIS Corporation d/b/a Lawrence Merchandising Services ("LMS") is a corporation created under the laws of the State of Delaware.

3.     Upon information and belief based on secretary of state office records from Delaware, California, and North Carolina, LMS's principal place of business is 9265 Sky Park Ct, Suite 100, San Diego, California.

4.     LMS is registered with the North Carolina Secretary of State under ID No. 1629813 to do business in North Carolina.

5.      Pursuant to 28 U.S.C. § 1332, the Court has subject-matter jurisdiction because there is complete diversity of citizenship between the parties and the amount in controversy far exceeds the sum or value of $75,000 exclusive of interest and costs.

6.      This Court has personal jurisdiction over LMS because (1) LMS purposely availed itself of the privileges of conducting activities in North Carolina by registering to do business in North Carolina and entering into a contract with Inmar Clearing (a North Carolina company) that was executed in North Carolina and has a choice of law provision specifying that it shall be governed by and construed in accordance with North Carolina law excluding its choice of law provisions, (2) Inmar Clearing's claims arise out of breaches of that North Carolina contract, and (3) the exercise of personal jurisdiction over LMS in these circumstances is therefore constitutionally reasonable.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Inmar Clearing's claims and/or damages occurred in the Middle District of North Carolina. Inmar Clearing has its principal place of business in Winston-Salem, North Carolina which is in this District.

8.      LMS may be served through its registered agent National Registered Agents, Inc. at 160 Mine Lake Ct., Ste 200, Raleigh, NC 27615.

## FACTUAL ALLEGATIONS

### Background

9.      Inmar Clearing is in the business of, *inter alia*, assisting retail stores with promotional and marketing solutions.

10. LMS is in the business of, *inter alia*, installing promotional and marketing displays at retail stores.

11. Inmar Clearing and LMS signed a Service Agreement, effective May 1, 2020, governing services between Inmar Clearing and LMS as described in any corresponding Statements of Work, including Statement of Work No. 1, also effective May 1, 2020, and all amendments thereto (collectively "Service Agreement").

12. Statement of Work No. 1 related to Inmar Clearing's in-store media program for a retail customer. It provided that Inmar Clearing would ship point of purchase promotional and marketing materials to the customer's stores, and an LMS representative would then build and install those displays in each store.

13. More specifically, Section 1 of Statement of Work No. 1 instructed that all stores "will be visited on a predetermined 12x per year cycle" and that Inmar Clearing "may deploy LMS more frequently to high volume stores or for special projects as needed."

14. It also instructed that the approximate call time for each store visit will "typically average between 45 minutes and 1-hour," with time billed "after 45 minutes in one-minute increments."

15. Section 4(A) established LMS's hourly rate for these services. Section 3(E) also instructed that those fees "shall remain in effect for two (2) years from the SOW Effective Date, after which LMS shall have the right to adjust annually its fees under this SOW by the lesser of the net percentage increase in the Consumer Price Index for All

3

Urban Consumers or the net percentage increase in the National Bureau of Labor Statistics adjustment (BLS A) on wages."

16. Regarding the number of stores, Section 4(C) stated that the approximate number of stores to be serviced under the agreement was "17,000+," therefore leading to at least "204,000" service calls. The First Amendment to Statement of Work No. 1 (dated June 15, 2020) established the number of stores as 16,222.

17. Section 5 of Statement of Work No. 1 provided that the term of the agreement shall continue until July 3, 2022, and then would have an automatic renewal period for two years unless terminated (1) by Inmar Clearing at least 60 days prior to the end of the initial term, or (2) by LMS at least 120 days prior to the end of the initial term.

18. Finally, pursuant to the First Amendment to Statement of Work No. 1, "[i]n the event LMS falls below the 95% task Compliance rate, LMS will pay a penalty" at a fixed dollar rate per "unit," which is "defined as a single sign or task per visit."

*LMS Breaches the Service Agreement*

19. In June 2022, LMS elected to exercise its annual right to adjust its hourly fees by the lesser of the increase in CPI or the increase in the National BLS adjustment on wages.

20. On December 14, 2022, LMS—through its representative Dan Colvard—sent an email to Inmar Clearing stating that to "provide the same level of service to [Inmar Clearing] at the established…rate through June," LMS must limit its services to only 5,219 stores, even though Statement of Work No. 1 explicitly instructs that the "approximate #

4

of stores" was "17000+" and the First Amendment to Statement of Work No. 1 (dated June 15, 2020) established the number of stores as 16,222.

21.    LMS also insisted on improperly raising the hourly rate by $2.50 in violation of the terms of the Service Agreement.

22.    Inmar Clearing rejected LMS's improper demands.

23.    Inmar Clearing informed LMS that LMS's demands conflicted with the terms of the Service Agreement, instructing that LMS's increased internal costs and decreased profit margins are not acceptable reasons for LMS refusing to fulfill its contractual obligations to service all of the agreed-upon stores at the agreed-upon rate.

24.    On April 3, 2023, Inmar Clearing asked LMS to confirm that all its required work for the April and May 2023 Event 4 (which included 13,735 stores) was moving forward.

25.    In response, however, LMS stated that the parties were "at an impasse," and "if you want LMS to proceed with providing any support for Event 4, we will only cover the 3080 stores in the attached file."

26.    When Inmar Clearing instructed that same day that LMS's repudiation violated its obligations under the Service Agreement and would result in damages to Inmar, Dan Colvard further affirmed LMS's repudiation of the contract by stating in an April 3 email to Inmar Clearing that, among other things, "We [LMS] have no obligation to take all stores" and "We [LMS] will not schedule any stores for Event 4."

27. Because of LMS's repudiation of the Service Agreement, Inmar Clearing was forced to quickly retain another vendor to fulfill LMS's obligations.

28. Inmar Clearing retained a replacement vendor to fulfill LMS's obligations at a rate which exceeded LMS's rate.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

29. Inmar Clearing incorporates by reference Paragraphs 1 through 28 as if fully stated herein.

30. The Service Agreement is a valid and binding contract.

31. The Service Agreement contains a North Carolina choice of law clause.

32. Inmar Clearing performed its obligations under the Service Agreement.

33. LMS breached its contractual obligations to Inmar Clearing under the Service Agreement by non-performance and by anticipatory repudiation prior to the expiration of the Service Agreement's term.

34. LMS breached by non-performance by failing to perform its required work for the remaining Events while the Service Agreement was still in effect.

35. Similarly, LMS breached the Service Agreement by failing to give 120-days notice of termination prior the end of the contract's term.

36. LMS's April 3, 2023 email was also a breach by anticipatory repudiation because it was a positive, distinct, unequivocal, and absolute statement to Inmar Clearing

that LMS would refuse and not perform its material contractual duties prior to the expiration of the Service Agreement's term.

37. At the time of LMS's repudiation, Inmar Clearing was ready, willing, and able to perform its obligations as agreed—including shipping point of purchase promotional and marketing materials to the stores and paying LMS at the agreed rate for its services with those materials at the stores—and would have done so but for LMS's repudiation.

38. Inmar Clearing treated LMS's refusal to perform as a complete repudiation and breach of contract and was forced to obtain another vendor.

39. LMS also violated the implied covenant of good faith and fair dealing by, among other things, acting in bad faith, contending that it was not obligated "to take all stores," and not making reasonable efforts to perform its obligations under the Service Agreement.

40. LMS's breach of the implied covenant of good faith and fair dealing prevented Inmar Clearing from receiving the benefits of the Service Agreement and therefore deprived Inmar Clearing of the fruits of the bargain.

41. Inmar Clearing has been directly and proximately damaged by LMS's breaches by, *inter alia*, being forced to hire a replacement vendor at a higher hourly rate to perform LMS's duties for the remaining term of the Service Agreement.

42. LMS is also liable for penalties under the Service Agreement, specifically the First Amendment to Statement of Work No. 1, in the amount of $1.50 per unit for falling below the 95% task Compliance rate for the remaining Events.

43.  As a result of LMS's breaches, Inmar Clearing is entitled to the entry of judgment against LMS in an amount exceeding $75,000.00, plus all costs of this action, in an amount to be determined at trial.

**WHEREFORE**, Plaintiff Inmar Clearing, Inc. prays:

a.  That the Court enter judgment against Defendant Retail Services WIS Corporation d/b/a Lawrence Merchandising Services under Count I of this Complaint;

b.  That the Court award compensatory and actual damages as a result of Defendant's conduct; and

c.  That the Court award Plaintiff such other and further relief as is just and proper.

This 22nd day of November 2023.

KILPATRICK TOWNSEND & STOCKTON LLP

By:     */s/ Jason M. Wenker*
**Jason M. Wenker (N.C. Bar No. 36076)**
1001 West Fourth Street
Winston-Salem, NC 27101
Tel: (336) 607-7300
jwenker@kilpatricktownsend.com

**D. Richard Self (N.C. Bar No. 60087)**
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
Tel: (919) 420-1749
rself@kilpatricktownsend.com

*Attorneys for Plaintiff Inmar Clearing, Inc.*

8

## JURY DEMAND

Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38, Plaintiff Inmar Clearing, Inc. requests a trial by jury on all issues properly heard by a jury.

*/s/ Jason M. Wenker*
**Jason M. Wenker (N.C. Bar No. 36076)**
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101
Tel: (336) 607-7300
jwenker@kilpatricktownsend.com

9